**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RESHAM SINGH and GURMIT KAUR, )<br><br>Plaintiffs, )<br><br>v. )<br><br>WELLS FARGO BANK, FEDERAL<br>HOME LOAN MORTGAGE )<br>CORPORATION, DOES 1-10, )<br><br>Defendants. ) | CASE NO. 1:10-CV-1659 AWI SMS<br><br>ORDER RE: MOTIONS TO<br>DIMSISS<br><br><br>(Docs. 5, 10, and 19) |

Defendants have filed motions to dismiss Plaintiffs' claims.  Plaintiffs have filed an amended complaint.  The amended complaint was filed in violation of Fed. Rule Civ. Proc 15 and is stricken.  Plaintiffs' original complaint is dismissed, but with leave to amend.

**I. History**[1]

Plaintiffs Resham Singh and Gurmit Kaur ("Plaintiffs"), together with third party Singh Balwinder obtained a $143,114 mortgage from Wells Fargo Home Mortgage Inc., now

---

[1]The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") for the purchase of 890 Jessica Street in Turlock, California.  The Deed of Trust was dated November 5, 2003 and recorded on November 13, 2003.  Plaintiffs fell behind on their mortgage payments, starting on June 1, 2009.  A Notice of Default was filed on October 2, 2009.  A Notice of Trustee's Sale was filed on January 6, 2010, setting the date of public sale as January 26, 2010.  At an unspecified date, Plaintiffs requested a loan modification from Wells Fargo under the federal Home Affordable Modification Program ("HAMP").  Wells Fargo agreed to a loan modification.  Notwithstanding the modification agreement, the house was sold in a non-judicial foreclosure on June 28, 2010, to Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac").  An Assignment of Deed of Trust and Trustee's Deed Upon Sale were filed July 7, 2010.

Plaintiffs filed suit against Wells Fargo and Freddie Mac in the Superior Court, County of Stanislaus on August 2, 2010.  The complaint alleges a quiet title cause of action against both Wells Fargo and Freddie Mac and breach of contract, breach of implied covenant of good faith and fair dealing, promissory fraud, and intentional infliction of emotional distress causes of action against Wells Fargo only.  Freddie Mac removed the case to the Eastern District on September 14, 2010, based on the special federal jurisdiction provisions of 12 U.S.C. §1452(f).  Freddie Mac and Wells Fargo filed separate motions to dismiss for failure to state a claim under Fed. Rule Civ. Proc. 12(b)(6).  Plaintiffs filed an opposition to Freddie Mac's motion and an amended complaint.  Wells Fargo then filed a motion to strike the amended complaint.  These matters were taken under submission without oral argument.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

1   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

2   of action will not do. Factual allegations must be enough to raise a right to relief above the

3   speculative level, on the assumption that all the allegations in the complaint are true (even if

4   doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that

5   actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56

6   (2007), citations omitted.  "[O]nly a complaint that states a plausible claim for relief survives a

7   motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the

8   Court of Appeals observed, be a context-specific task that requires the reviewing court to draw

9   on its judicial experience and common sense. But where the well-pleaded facts do not permit the

10  court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it

11  has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

12  (2009), citations omitted.  The court is not required "to accept as true allegations that are merely

13  conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

14  State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general

15  allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l

16  Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957),

17  overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is

18  whether there is any set of "facts that could be proved consistent with the allegations of the

19  complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S.

20  506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts

21  which [they have] not alleged, or that the defendants have violated...laws in ways that have not

22  been alleged." Associated General Contractors of California, Inc. v. California State Council of

23  Carpenters, 459 U.S. 519, 526 (1983).

24          In deciding whether to dismiss a claim under Fed. Rule Civ. Proc. 12(b)(6), the Court is

25  generally limited to reviewing only the complaint.  "There are, however, two exceptions....First, a

26  court may consider material which is properly submitted as part of the complaint on a motion to

27  dismiss...If the documents are not physically attached to the complaint, they may be considered if

28  the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on

**3**

1  them. Second, under Fed. Rule Evid. 201, a court may take judicial notice of matters of public

2  record." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.

3  The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine,

4  which permits us to take into account documents whose contents are alleged in a complaint and

5  whose authenticity no party questions, but which are not physically attached to the plaintiff's

6  pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court

7  may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

8  opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers

9  should be considered by the court in determining whether to grant leave to amend or to dismiss

10  the complaint with or without prejudice." <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir.

11  2003), citations omitted.

12      If a Fed. Rule Civ. Proc. 12(b)(6) motion to dismiss is granted, claims may be dismissed

13  with or without prejudice, and with or without leave to amend.  "[A] district court should grant

14  leave to amend even if no request to amend the pleading was made, unless it determines that the

15  pleading could not possibly be cured by the allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d

16  1122, 1127 (9th Cir. 2000) (en banc), quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir.

17  1995).  In other words, leave to amend need not be granted when amendment would be futile.

18  <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 898 (9th Cir. 2002).

19

20                                    **III. Discussion**

21  **A. Amended Complaint**

22      Plaintiffs filed an amended complaint on November 23, 2010, containing twelve causes

23  of action. Doc. 17.  Plaintiffs were not granted leave to amend by the court nor did they have

24  written consent from opposing parties per Fed. Rule Civ. Proc. 15(a)(2).  Fed. Rule Civ. Proc.

25  15(a)(1) states, "A party may amend its pleading once as a matter of course within: (A) 21 days

26  after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days

27  after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e),

28  or (f), whichever is earlier."  Freddie Mac filed a Fed. Rule Civ. Proc. 12(b) motion on

**4**

September 30, 2010. Doc. 5.  Freddie Mac has provided proof of service by electronic

transmission through the Eastern District's CM/ECF system upon Plaintiffs' attorney, Aldon

Louis Bolanos, on September 30, 2010. Doc. 8.  Mr. Bolanos consented to electronic service.

Plaintiff's amended complaint was not filed within the 21 day window after the September 30,

2010 service of the Fed. Rule Civ. Proc. 12(b) motion.  It is stricken and will not be considered.


**B. Breach of Contract**

Plaintiffs' first cause of action is that Wells Fargo breached a written contract:

> Plaintiffs approached defendant for a loan modification. Defendant initially obliged, and plaintiffs made all payments at the modified amount in a timely fashion. At the same time, plaintiffs provided all requested information to defendant lender in compliance with the HAMP program....Defendant was obligated to follow HAMP guidelines and allow these Americans to remain in their family home under the terms of the modified loan. But they did not. Instead, they simply without warning foreclosed on the family home....

> Plaintiffs and defendant did in fact enter into a written loan modification agreement. Plaintiffs complied with all terms and conditions and covenants and promises under that modification, including but not limited to making timely payments at the modified amounts. Defendant Wells Fargo Bank breached the contract by foreclosing on the family home.

 Doc. 1, Complaint, at 2:23-3:15 (8-9 of 19). "The standard elements of a claim for breach of

contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

defendant's breach, and (4) damage to plaintiff therefrom." Wall Street Network, Ltd. v. New

York Times Co., 164 Cal. App. 4th 1171, 1178 (Cal. App. 2nd Dist. 2008), citations omitted.

Wells Fargo argues that all four elements are missing from the complaint.

Plaintiff has sufficiently stated facts supporting the second through fourth elements.

Wells Fargo claims, "Plaintiffs do not state facts supporting their performance. Instead, Plaintiffs

merely conclude that they 'complied with all terms and conditions and covenants and promises.'"

Doc. 10, Part 1, Wells Fargo Brief, at 6:11-14.  However, Plaintiffs plead that they made all

modified payments on time and provided requested information.  Wells Fargo also claims,

"Plaintiffs fail to state facts alleging breach. Plaintiffs do not state the terms of the alleged

contract or how Wells Fargo violated any such term. Notably, Plaintiffs do not allege that the

alleged contract included any promise to abstain from foreclosure....If Plaintiffs mean to allege

1   that the alleged damage was the foreclosure, it was Plaintiffs' own breach of the Deed of Trust

2   that resulted in the non-judicial foreclosure proceedings" Doc. 10, Part 1, Wells Fargo Brief, at

3   6:13-17 and 6:22-24.  Plaintiffs do state that they were to be allowed to remain in their family

4   home under the terms of the modified loan.  Being foreclosed upon in violation of a contract is

5   self-evident damage.

6       The first element, existence of a contract, is problematic.  Wells Fargo states, "Plaintiffs

7   already had a legal obligation to make payments under loan. By way of this alleged modification,

8   Plaintiffs only offered the same promise that they already owed to the defendants, payments on

9   the loan. No additional consideration is plead and therefore Plaintiffs have failed to properly

10  plead the existence of a contract as an element of the breach of contract cause of action." Doc.

11  10, Part 1, Wells Fargo Brief, at 6:2-7.  In general, agreeing to pay part of a preexisting debt is

12  not valid consideration. See Grant v. Aerodraulics Co., 91 Cal. App. 2d 68, 75 (Cal. App. 2nd

13  Dist. 1949).  However, a modification of a mortgage that changes substantive terms can give rise

14  to consideration depending on the specific contract. See Occidental Life Ins. Co. v. McCracken,

15  19 Cal. App. 2d 239, 241 (Cal. App. 3rd Dist. 1937) ("Here, however, the time of payment of the

16  balance due was extended, monthly payments were provided for, and the interest payments and

17  rate on the amount due changed from 6 per cent payable semiannually to 6 per cent payable

18  monthly. Something more than merely paying a portion of the mortgage due was done. Things

19  not contemplated by the original contract were here undertaken, such as paying the interest in

20  advance in monthly instalments, instead of semiannually as provided in the note, and the

21  forbearance of legal action to collect the debt while the new agreement was being faithfully

22  performed").  Additionally, it is unclear from the complaint whether the new written contract

23  required Plaintiffs to disclose new financial information to Wells Fargo which could be valuable

24  in deciding between judicial or non-judicial foreclosure.  In the absence of consideration, a

25  promissory estoppel theory might avail under certain circumstances.  As currently plead,

26  Plaintiffs have not stated sufficient facts to support consideration and so fails to state a breach of

27  contract claim.

28

**C. Quiet Title**

Plaintiffs's second cause of action seeks to quiet title on the property against Wells Fargo and Freddie Mac.  Plaintiffs admit, "Mr. Singh does not assert anywhere in his complaint that there were any irregularities in the trustee's sale. A notice of default was recorded against a deed of trust. A notice of trustee's sale was then recorded. Then the trustee's sale took place. There was nothing irregular or defective about it. What the Singh family does assert is that its lender Wells Fargo Bank, breached its contract with them....So is that Freddie Mac's fault? Of course not. But since it is Freddie Mac which holds a defective and clouded title to the property, one obtained by fraud and breach of contract and the implied covenant, the title it holds is invalid....It is well-settled black letter law that where title is clouded, transfer of a deed to a third party does not cure the defect, and the title remains clouded." Doc. 13, Opposition, at 1:23-28 and 2:7-12. Defendants argue that a non-judicial foreclosure sale under a deed of trust extinguished Plaintiffs' rights in the property as such sales constitute "final adjudication of the rights of the borrower and lender." Doc. 10, Part 1, Wells Fargo Brief, at 7:20-22, quoting <u>Nguyen v. Calhoun</u>, 105 Cal. App. 4th 428, 441 (Cal. App. 6th Dist. 2003); see also Doc. 6, Freddie Mac Brief, at 5:16-19.

The effect of a non-judicial sale under California law is summarized as follows:

Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser....

As a general rule, the purchaser at a nonjudicial foreclosure sale receives title under a trustee's deed free and clear of any right, title or interest of the trustor. A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. Once the trustee's sale is completed, the trustor has no further rights of redemption.

The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser.

Since the presumption is rebuttable as to purchasers other than bona fide purchasers, the

7

purchaser's title may in some instances be recovered by the trustor in an attack on the validity of the sale. As to a bona fide purchaser, however, the presumption is conclusive. Thus, as a general rule, a trustor has no right to set aside a trustee's deed as against a bona fide purchaser for value by attacking the validity of the sale. The conclusive presumption precludes an attack by the trustor on a trustee's sale to a bona fide purchaser even though there may have been a failure to comply with some required procedure which deprived the trustor of his right of reinstatement or redemption. The conclusive presumption precludes an attack by the trustor on the trustee's sale to a bona fide purchaser even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor. Where the trustor is precluded from suing to set aside the foreclosure sale, the trustor may recover damages from the trustee.

As noted previously, the conclusive presumption is applicable to the sale to a bona fide purchaser after the delivery of a trustee's deed containing the required recitals. Although a nonjudicial foreclosure sale is generally complete upon acceptance of a bid by the trustee, the conclusive presumption does not apply until a trustee's deed is delivered. Thus, if there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the trustee's deed, the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process.

Where there is no irregularity in a nonjudicial foreclosure sale and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and the value of the property is not a sufficient ground for setting aside the sale. However, an irregularity in the nonjudicial foreclosure sale coupled with a gross inadequacy of price may be sufficient to set aside the sale, where the conclusive presumption does not come into effect because the trust deed has not yet been delivered.

Moeller v. Lien, 25 Cal. App. 4th 822, 830-832 (Cal. App. 2nd Dist. 1994), citations omitted. "[T]rust deed nonjudicial foreclosure sales are comprehensively regulated by the detailed statutory scheme set forth in section 2924 et seq., which is not based on common law contract principles. We therefore decline...to base our decision on common law contract principles of voidness and its corollaries of voidability, enforceability, invalidity and illegality." Residential Capital v. Cal-Western Reconveyance Corp., 108 Cal. App. 4th 807, 821 (Cal. App. 4th Dist. 2003). "[A] bona fide purchaser is not chargeable with the fraud of his predecessors and takes a title purged of any anterior fraud affecting it and free from any equities existing between the original parties." Marlenee v. Brown, 21 Cal. 2d 668, 675 (Cal. 1943), citations omitted. The language used in many opinions dealing with non-judicial foreclosure is sweeping and suggests that such a sale is invulnerable to challenge except in limited circumstances set out by statute. In this case, the Assignment of Deed Trust and Trustee's Deed Upon Sale were recorded on July 7, 2010. Doc. 11, Ex. F, at 40. Plaintiffs admit that all the non-judicial foreclosure procedures were properly followed. "The elements of bona fide purchase are payment of value, in good faith, and

1    without actual or constructive notice of another's rights." <u>Gates Rubber Co. v. Ulman</u>, 214 Cal.

2    App. 3d 356, 364 (Cal. App. 2d Dist. 1989), citing 4 Witkin, Summary of Cal. Law (9th ed.

3    1987) Real Property, § 206.[2]   Further, Plaintiffs's briefing suggest that Freddie Mac is a bona fide

4    purchaser who was not aware of Plaintiffs' alleged loan modification agreement.

5          Another case cautions that, "It is the general rule that courts have power to vacate a

6    foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where

7    the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where

8    there has been such a mistake that to allow it to stand would be inequitable to purchaser and

9    parties." <u>Bank of America Nat'l Trust & Sav. & Trust Asso. v. Reidy</u>, 15 Cal. 2d 243, 248 (Cal.

10   1940).   In this case, Plaintiffs are, in essence, arguing the existence of fraud in procuring the

11   foreclosure decree as opposed to problems having to do with the sale process.   <u>Reidy</u> provides no

12   citation for the proposition Plaintiffs would rely on.   Further, since its issuance, it has only been

13   cited in cases dealing with sale process irregularities. See <u>Alliance Mortgage Co. v. Rothwell</u>, 10

14   Cal. 4th 1226, 1237 (Cal. 1995); <u>Karoutas v. HomeFed Bank</u>, 232 Cal. App. 3d 767, 775 (Cal.

15   App. 1st Dist. 1991); <u>Sierra-Bay Fed. Land Bank Assn. v. Superior Court</u>, 227 Cal. App. 3d 318,

16   337 (Cal. App. 3rd Dist. 1991); <u>Countrywide Home Loans, Inc. v. United States</u>, 2007 U.S. Dist.

17   LEXIS 1625, *53 (E.D. Cal., Jan. 9, 2007).   Another court found that plaintiffs had stated

18   declaratory relief and quiet title claims post trustee sale in a case where the deed of trust

19   inadvertently included contiguous property that was not meant to be mortgaged. See <u>Storm v.</u>

20   <u>America's Servicing Co.</u>, 2009 U.S. Dist. LEXIS 103647, *23 (S.D. Cal. Nov. 6, 2009).   While

21   failing to set out a firm rule, these cases do suggest some limits to the broad language used in

22   <u>Moeller</u>.

23         The factual situation at hand is similar to that of <u>Melendrez v. D & I Investment, Inc.</u>, 127

24   Cal. App. 4th 1238 (Cal. App. 6th Dist. 2005) in which a non-judicial foreclosure sale took place

25   _____

26        [2]However, "A beneficiary who acquires the property at foreclosure sale through a credit
27   bid may not qualify as a BFP." <u>Melendrez v. D & I Investment, Inc.</u>, 127 Cal. App. 4th 1238,
     1253 n.22 (Cal. App. 6th Dist. 2005), citing <u>Tomczak v. Ortega</u>, 240 Cal. App. 2d 902, 906-07
28   (Cal. App. 1st Dist. 1966).

1    in violation of a repayment agreement.  The opinion recognized the tension between <u>Moeller</u>'s

2    position that a non-judicial foreclosure sale to a bona fide purchaser is absolutely final and other

3    cases which suggest that the transaction may still be subject to reversal:

> Section 2924's conclusive presumption language for BFP's applies only to challenges to
> statutory compliance with respect to default and sales notices. In reaching this conclusion,
> we recognize that there is dictum that suggests that the conclusive presumption under
> section 2924 applies across the board to any claimed irregularities in the trustee's sale.
> The court in <u>Moeller</u> held that the presumption under section 2924 provides that the
> trustee's 'sale has been conducted regularly and properly,' and that, as against a BFP, the
> presumption operates to prevent the trustor from 'attacking the validity of the sale.' Cases
> following <u>Moeller</u> have similarly described the conclusive presumption—applicable
> under section 2924 where the buyer is a BFP who has received a trustee's deed—as
> precluding any attack on the trustee's sale. To the extent that Buyer may construe these
> cases as describing section 2924's presumption as precluding any attack on the
> foreclosure sale as to a BFP—irrespective of whether the challenge relates to the
> Trustee's compliance with procedural requirements concerning the default and sale
> notices—we decline to follow such interpretation.

12   <u>Melendrez v. D & I Investment, Inc.</u>, 127 Cal. App. 4th 1238, 1256 (Cal. App. 6th Dist. 2005).

13   Nonetheless, the court found the buyer's status as a bona fide purchaser to be dispositive:

> In this instance, Borrowers' theory was that the trustee's sale violated the Repayment
> Agreement; they claim the Agreement was orally modified to permit them to make the
> June payment at the end of July...the most that can be said is that, in Borrowers' view,
> there was some potential fraud or imposition because Lender failed to instruct Trustee to
> postpone the foreclosure sale to a date after the second and third payments were due (i.e.,
> after July 30). There was no evidence that Buyer knew about the Repayment Agreement
> itself, let alone its alleged modification. Further, there were no facts sufficient to put
> Buyer on notice of the Agreement or its alleged modification. Buyer was not chargeable
> with any alleged fraud or imposition, and there was simply no basis for setting aside the
> trustee's sale.

20   <u>Melendrez v. D & I Investment, Inc.</u>, 127 Cal. App. 4th 1238, 1258 (Cal. App. 6th Dist. 2005),

21   citations omitted.  This result (though not the reasoning) is echoed in another case where a

22   foreclosure sale took place in contravention of an agreement between the trustor and beneficiary:

> The agreement to postpone the sale under section 2924g cannot be disregarded in
> evaluating whether the sale procedure was substantially defective. Only a properly
> conducted foreclosure sale, free of substantial defects in procedure, creates rights in the
> high bidder at the sale. Because the provisions of sections 2924–2924k comprise a
> well-coordinated statutory scheme, there is no need for an express statement in section
> 2924g that a violation of its sale postponement provision will insulate the trustor and
> beneficiary from liability. Defects in the notice requirements of the statutory scheme have
> been held to be those defects that substantially infringe on the rights of the trustor to
> protect his encumbered real property from loss by foreclosure. Therefore, if the notice's
> defect is detected before the trustee's deed is issued, the successful foreclosure sale
> bidder has not been seriously prejudiced and its remedy is limited to the return of the sale

price plus interest. However, if the trustee's deed with the appropriate recitations has been issued to a bona fide purchaser, the purpose of the statutory scheme to provide a prompt and efficient remedy for creditors is implemented by the section 2924 statutory presumption of finality.

Residential Capital v. Cal-Western Reconveyance Corp., 108 Cal. App. 4th 807, 822 (Cal. App. 4th Dist. 2003), citations omitted.  As plead, Plaintiffs can not reverse the results of the non-judicial foreclosure.

**D. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege "Plaintiffs met the NPV test [of HAMP], and defendant Wells Fargo was required to modify their loan. But instead, defendant Wells Fargo foreclosed anyway, despite receiving payments under the modified terms on what it described as a 'temporary modification.' Such actions constitute bad faith on the part of Wells Fargo." Doc. 1, Complaint, at 4:27-5:3 (10-11 of 19).  Wells Fargo admits to being a covered servicer. Doc. 10, Part 1, Wells Fargo Brief, at 9:11.  Under HAMP, "If the loan qualifies for a modification after consideration of all the aforementioned factors [including NPV test], the servicer is obligated to provide a trial period loan modification. If the borrower remains current throughout the trial period, the servicer must then provide a loan modification." Williams v. Geithner, 2009 U.S. Dist. LEXIS 104096, *9-10 (D. Minn. Nov. 9, 2009), citations omitted.  However, it is well established that there is no private cause of action under HAMP. See Hart v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 85272, *13-14 ( E.D. Mich. Aug. 19, 2010); Zeller v. Aurora Loan Servs., LLC, 2010 U.S. Dist. LEXIS 80449, *2 (W.D. Va. Aug. 10, 2010); Hoffman v. Bank of Am., 2010 U.S. Dist. LEXIS 70455, *6 (N.D. Cal. June 30, 2010); Simon v. Bank of Am., 2010 U.S. Dist. LEXIS 63480, *26-27 (D. Nev. June 23, 2010); Marks v. Bank of Am., 2010 U.S. Dist. LEXIS 61489, *13 (D. Ariz. June 22, 2010); De La Salle v. America's Wholesale Lender, 2010 U.S. Dist. LEXIS 36319, *3-4 (E.D. Cal. Apr. 13, 2010);  Aleem v. Bank of Am., 2010 U.S. Dist. LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010).  As currently plead, the third cause of action is an attempt to plead around the lack of private cause of action for HAMP violations.  Plaintiffs fail to state a breach of implied covenant claim.

11

**E. Promissory Fraud**

Plaintiffs allege against Wells Fargo: "Defendant engaged in fraud by promising plaintiffs both that it would and then that it already had, entered into a loan modification agreement. It promised both the agreement and its own performance toward that agreement, as well as the agreement itself. However, as evinced by its conduct, it had no intention of performing these promises, and rather was setting forth token procedures to demonstrate to any governmental oversight that it had at least made an effort to modify, as required by recently enacted laws referenced above. The promises were made in bad faith, did induce plaintiffs to perform in accord with those promises." Doc. 1, Complaint, at 5:25-6:5.  "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." <u>Engalla v. Permanente Medical Group, Inc.</u>, 15 Cal. 4th 951, 974 (Cal. 1997), citations omitted.

A claim for promissory fraud must meet the heightened Fed. Rule Civ. Proc. 9(b) pleading standard. See <u>Hands on Video Relay Servs. v. Am. Sign Language Servs. Corp.</u>, 2009 U.S. Dist. LEXIS 124899, *31-33 (E.D. Cal. Aug. 12, 2009).  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. Rule Civ. Proc. 9(b).  A complaint alleging fraud meets the standard if it alleges the time, place, and content of the fraudulent statements, including reasons why the statements are false. <u>Decker v. GlenFed, Inc.</u>, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

As Wells Fargo points out, Plaintiffs have not provided sufficiently specific facts. Plaintiffs have only made a general statement as to the content of the allegedly fraudulent promise that fail to meet the Fed. Rule Fed. Proc. 9(b) standard. See <u>Reynoso v. Paul Fin., LLC</u>, 2009 U.S. Dist. LEXIS 106555, *21 (N.D. Cal. Nov. 16, 2009) ("Plaintiff claims that CityMutual and Paul Financial misrepresented that the maximum yearly increase would be $150 until year six, and that the highest payment possible would be $2749.02, when in fact the highest payment

1    possible was $5817.04. Plaintiff does not allege that a particular employee made these

2    representations, and does not state when or how these representations were made. Plaintiff

3    therefore fails to meet the pleading requirements for fraud").  Further, Plaintiffs have not stated

4    exactly how they relied upon Wells Fargo's promise and how such reliance resulted in damages.

5

6    **F. Intentional Infliction of Emotional Distress**

7        Plaintiffs allege against Wells Fargo, "As a proximate cause of defendant's bad faith

8    backhandedness described above, plaintiffs have started to suffer serious and debilitating adverse

9    health consequences." Doc. 1, Complaint at 6:15-17 (12 of 19).  "The elements of the tort of

10   intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the

11   defendant with the intention of causing, or reckless disregard of the probability of causing,

12   emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

13   actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

14   Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in

15   a civilized community." Christensen v. Superior Court, 54 Cal. 3d 868, 903 (Cal. 1991), citations

16   omitted.  The act of foreclosing on a home (absent other circumstances) is not the kind of

17   extreme conduct that supports an intentional infliction of emotional distress claim. See Harvey

18   G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc., 2010 U.S. Dist.

19   LEXIS 99161, *13 (N.D. Cal. Sept. 22, 2010); Mehta v. Wells Fargo Bank, N.A., 2010 U.S.

20   Dist. LEXIS 88336, *48 (S.D. Cal. Aug. 26, 2010) ("The fact that one of Defendant Wells

21   Fargo's  employees allegedly stated that the sale would not occur but the house was sold anyway

22   is not outrageous as that word is used in this context").  Without other aggravating circumstances

23   showing outrageousness, Plaintiffs fail to state an intentional infliction of emotional distress

24   claim.

25

26                              **IV. Order**

27        Plaintiffs' First Amended Complaint (Doc. 19) is STRICKEN.  Plaintiffs' original

28   complaint is DISMISSED with leave to amend.  Plaintiffs must file an amended complaint

within thirty (30) days of the filing of this order.


IT IS SO ORDERED.


Dated:    January 7, 2011

_____

CHIEF UNITED STATES DISTRICT JUDGE

14