UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESHAM SINGH and GURMIT KAUR,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, FEDERAL HOME LOAN MORTGAGE CORPORATION, DOES 1-10,<br><br>Defendants. | CASE NO. 1:10-CV-1659 AWI SMS<br><br>ORDER RE: MOTIONS TO DIMSISS<br><br><br><br>(Docs. 25 and 35) |

**I. History**[1]

Plaintiffs Resham Singh and Gurmit Kaur ("Plaintiffs"), together with third party Singh Balwinder obtained a $143,114 mortgage ("Original Mortgage") from Wells Fargo Home Mortgage Inc., now Defendant Wells Fargo Bank, N.A. ("Wells Fargo") for the purchase of 890 Jessica Street in Turlock, California ("Property").  The Deed of Trust was dated November 5, 2003 and recorded on November 13, 2003.  Plaintiffs fell behind on their mortgage payments, starting on June 1, 2009.  A Notice of Default was filed on October 2, 2009.  A Notice of Trustee's Sale was filed on January 6, 2010, setting the date of public sale as January 26, 2010.

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

At an unspecified date, Plaintiffs requested a loan modification from Wells Fargo under the federal Home Affordable Modification Program ("HAMP"). Wells Fargo agreed to a trial loan modification ("Temporary Modification"). Wells Fargo then sent Plaintiffs papers for a permanent loan modification ("Permanent Modification"). Plaintiffs signed and returned those documents at the end of March/ beginning of April 2010. Notwithstanding the Permanent Modification, the house was sold in a non-judicial foreclosure on June 28, 2010, to Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"). An Assignment of Deed of Trust and Trustee's Deed Upon Sale were filed July 7, 2010.

Plaintiffs filed suit against Wells Fargo and Freddie Mac in the Superior Court, County of Stanislaus on August 2, 2010. The complaint alleges a quiet title cause of action against both Wells Fargo and Freddie Mac and breach of contract, breach of implied covenant of good faith and fair dealing, promissory fraud, and intentional infliction of emotional distress causes of action against Wells Fargo only. Freddie Mac removed the case to the Eastern District on September 14, 2010, based on the special federal jurisdiction provisions of 12 U.S.C. §1452(f). Freddie Mac and Wells Fargo filed motions to dismiss for failure to state a claim under Fed. Rule Civ. Proc. 12(b)(6) which were granted in part and denied in part. Plaintiffs filed a first amended complaint ("FAC"). The FAC lists thirteen causes of action. Freddie Mac and Wells Fargo have again filed motions to dismiss for failure to state a claim under Fed. Rule Civ. Proc. 12(b)(6). Plaintiffs have filed oppositions to both motions. In key part, Plaintiffs have agreed to abandon six causes of action (the fifth through tenth). Doc. 31, Opposition to Wells Fargo, at 8:1-3. The remaining contested causes of action are breach of contract, unfair competition law, fraud, breach of the implied covenant of good faith and fair dealing, rescission and restoration, possession, and quiet title. These matters were taken under submission without oral argument.

**II. Legal Standards**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient

facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), citations omitted. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citations omitted. The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds at 127 S. Ct. 1955, 1969. Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). At the other bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated...laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Fed. Rule Civ. Proc. 12(b)(6), the Court is generally limited to reviewing only the complaint. "There are, however, two exceptions....First, a

court may consider material which is properly submitted as part of the complaint on a motion to dismiss...If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. Rule Evid. 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted. The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted. "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), citations omitted.

If a Fed. Rule Civ. Proc. 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### III. Discussion

Overall, Wells Fargo argues that "Plaintiffs' claim is ultimately grounded in the allegation that Wells Fargo was obligated to provide them with a HAMP loan modification and failed to do so. However, there is no legal basis for such claim because there is no private right of action for HAMP violations." Doc. 26, Brief, at 4:14-16. Wells Fargo is correct that there is no private right of action under HAMP. See Hart v. Countrywide Home Loans, Inc., 2010 U.S. Dist.

1 LEXIS 85272, *13-14 ( E.D. Mich. Aug. 19, 2010); Zeller v. Aurora Loan Servs., LLC, 2010
2 U.S. Dist. LEXIS 80449, *2 (W.D. Va. Aug. 10, 2010); Hoffman v. Bank of Am., 2010 U.S.
3 Dist. LEXIS 70455, *6 (N.D. Cal. June 30, 2010); Simon v. Bank of Am., 2010 U.S. Dist.
4 LEXIS 63480, *26-27 (D. Nev. June 23, 2010); Marks v. Bank of Am., 2010 U.S. Dist. LEXIS
5 61489, *13 (D. Ariz. June 22, 2010); De La Salle v. America's Wholesale Lender, 2010 U.S.
6 Dist. LEXIS 36319, *3-4 (E.D. Cal. Apr. 13, 2010); Aleem v. Bank of Am., 2010 U.S. Dist.
7 LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010).  To the extent that any of Plaintiffs' claims are
8 based on an attempt to enforce the provisions of HAMP, those theories are dismissed.  As far as
9 can be determined, no cause of action can be based on the Temporary Modification.

10 However, the focus of Plaintiffs' claims in this suit is that Wells Fargo did agree to the
11 Permanent Modification and then violated its terms.  Thus, Plaintiffs' claims are not dependent
12 upon HAMP but rather upon the Permanent Modification as a separate, enforceable contract
13 between Plaintiffs and Wells Fargo.  Wells Fargo has neither argued nor presented case law that
14 suggests HAMP preempts such causes of action.  The court treats this breach of contract claim as
15 Plaintiffs' central allegation in this suit.

16 Plaintiffs' allegations in the FAC generally discuss Wells Fargo's actions.  Regarding
17 Freddie Mac, Plaintiffs states "Purchaser Freddie Mac was fully apprised of defendant bank's
18 fraud and bad faith in its efforts to wrest title from the unsuspecting Singh Family. Freddie Mac
19 acquiesced by its inaction to this fraudulent course of conduct which included paying lip service
20 to a Permanent Loan Modification Agreement when in fact the bank had no inclination or
21 intention of modifying the loan or helping the family to stay in its home." Doc. 24, FAC, at
22 21:10-15.  In briefing the present motions, Plaintiffs argue that "Federal Home Loan, is
23 specifically alleged to have been actively engaged in a contractual relationship with Lender Wells
24 Fargo whereby Lender would proceed to liquidate a 'toxic asset' under a government mandate
25 which would require Federal Home Loan to purchase the asset at its full encumbered amount.
26 Thus, it is clear that under the court's reasoning in Melandrez, defendant Federal Home Loan is
27 absolutely chargeable with the 'fraud or imposition' which led to the Plaintiff[s] being
28 dispossessed of [their] family home." Doc. 36, Opposition to Freddie Mac, at 3:18-24.  Plaintiffs

5

appear to be suggesting that Freddie Mac should be considered a conspirator of Wells Fargo However, under Plaintiffs' own reasoning, Freddie Mac's actions in purchasing the property were mandated by the U.S. Government. Plaintiffs may not use state law to interfere with the operation of federal law. Plaintiffs have not explained how Wells Fargo's actions can be imputed to Freddie Mac.

**A. Breach of Contract**

"The standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (Cal. App. 2nd Dist. 2008), citations omitted. Wells Fargo argues that all four elements are missing from the FAC. It was previously determined that, "Plaintiff[s have] sufficiently stated facts supporting the second through fourth elements." Doc. 23, January 7, 2011 Order, at 5:21. Regarding the existence of the contract, Plaintiffs did not sufficiently allege consideration in the original complaint. The FAC states,

> Plaintiffs and defendant did in fact enter into a written Permanent Loan Modification Agreement. Plaintiffs complied with all terms and conditions and covenants and promises under that modification, including but not limited to executing and returning the offer of modification sent to them and making timely payments at the modified amounts on the new extended schedule, which required them to make substantially greater payments of interest over the life of the loan.

Doc. 24, FAC, at 9:1-6. California case law suggests that additional interest qualifies as consideration for a modification: "an agreement for payment of a part of the amount due is without consideration. Here, however, the time of payment of the balance due was extended, monthly payments were provided for, and the interest payments and rate on the amount due changed from 6 per cent payable semiannually to 6 per cent payable monthly. Something more than merely paying a portion of the mortgage due was done....Under this rule a promise to extend time of payment of a debt in consideration of a promise of the debtor to pay interest where none was reserved in the original contract, or to pay increased interest, is binding" Occidental Life Ins. Co. v. McCracken, 19 Cal. App. 2d 239, 241-42 (Cal. App. 3rd. Dist. 1937).

Defendants argue that the Permanent Modification does not constitute a written contract. Freddie Mac cites to Grill v. BAC Home Loans Servicing LP, 2011 WL 127891 (E.D. Cal. Jan.14, 2011), arguing "The Court [in that case] did not find that the language in the same type of trial plan created a binding contract for a permanent loan modification." Doc. 37, Freddie Mac Reply, at 4:27-5:1.  Grill must be distinguished as it dealt with a trial modification; unlike the Permanent Modification, the text of that trial modification made it clear that it was not a permanent change to the terms of the mortgage. Grill v. BAC Home Loans Servicing LP, 2011 WL 127891, *4 (E.D. Cal. Jan.14, 2011) ("If I am in compliance with this Trial Period Plan ... then the Servicer will provide me a ... Modification Agreement that would amend ... the Loan Documents....I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement.... I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan").  Wells Fargo claims the Permanent Modification was not a valid contract because "Plaintiffs do not state anywhere in the FAC or the Opposition to the Motion to Dismiss the FAC that they 'receive[d] from the Lender a copy of th[e] Agreement signed by the Lender" as required. Doc. 33, Wells Fargo Reply, at 4:8-10.  The Permanent Modification document was sent by Wells Fargo to Plaintiffs for their signature and does include language "I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender..." Doc. 32, Attachment 11, Permanent Modification, at 30 of 40. However, the materials sent to Plaintiffs include the statement, "To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed pre-paid envelope by 4/7/2010." Doc. 32, Attachment 11, Permanent Modification, at 28 of 40, emphasis in the original.  That is the language of straightforward offer and acceptance.  At minimum, it creates an ambiguity which must be resolved in favor of Plaintiffs at this stage of litigation. Further, Plaintiffs allege that a number of Wells Fargo employees made verbal assurance in May 2010 that the Permanent Modification was in effect. Doc. 24, FAC, at 11:21-12:5.  As alleged,

**7**

Plaintiffs have stated a cause of action for breach of contract against Wells Fargo.

There are no relevant allegations regarding Freddie Mac. Plaintiffs have not stated a cause of action against Freddie Mac.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege that Wells Fargo violated HAMP and that "defendant entered into a Permanent Modification Agreement with plaintiffs and made repeated verbal and written representations that the agreement was in full force and effect, and that plaintiff was in complete compliance with all material terms thereof." Doc. 24, FAC, at 13:14-17.  As previously stated, there is no private cause of action for HAMP violations and Plaintiffs may not use state law causes of action to plead around that bar. Plaintiffs agree that the cause of action is based on alleged breach of the Permanent Modification. Doc. 31, Opposition to Wells Fargo, at 7:19-27. Plaintiffs have stated a cause of action against Wells Fargo.

There are no relevant allegations regarding Freddie Mac. Plaintiffs have not stated a cause of action against Freddie Mac.

**C. Fraud**

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (Cal. 1996), citations omitted. Federal Rule of Civil Procedure 9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct...so that they can defend against the charge and not just deny that they have done anything wrong." Though the substantive elements of fraud are set by a state law, those elements must be pled in accordance with the requirements of Rule 9(b). See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Allegations of fraud should specifically include "an account of the time, place, and specific content of the false representations as well as

the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Stated differently, the complaint must identify "the who, what, when, where, and how" of the fraud. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

Plaintiffs state, "The Defendant fraudulently induced plaintiff into a balloon loan by representing to plaintiff that the loan would be refinanced prior to the balloon provisions taking place. It further fraudulently induced plaintiff into inaction toward alternative financing by representing to plaintiff that it would enter into a loan modification, a refinancing, on the note, and that it had already altered the terms of the note as agreed." Doc. 24, FAC, at 11:8-13. Plaintiffs allege two distinct acts of fraud. They first allege they were fraudulently induced to procure the Original Mortgage, which was arranged in November 2003. A claim for fraud has a statute of limitations of three years, but "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Code Civ. Proc. §338(d). Wells Fargo argues that the statute of limitations has run. In opposition, Plaintiffs do not address this argument; they appear to have abandoned the claim. Again, the focus of this suit is the Permanent Modification.

The second allegation is that Wells Fargo employees falsely represented to Plaintiffs over the phone in May 2010 that the Permanent Modification was in effect and had stopped the foreclosure. Wells Fargo states, "As for the alleged statement made by Angel, that 'payments under the Permanent Loan Modification Agreement would stop the foreclosure,' Plaintiffs have not sufficiently stated that Angel made any such statement to Plaintiffs regarding their specific loan." Doc. 26, Wells Fargo Brief, at 14:9-12. Plaintiffs' allegations (part of which Wells Fargo has quoted) are sufficiently specific to put Wells Fargo on notice of the nature of the misrepresentation. Wells Fargo also argues that any supposed misrepresentation did not result on reliance or damage due to the reliance. Plaintiffs allege "they refrained from seeking legal representation, though they had strongly considered it and had been in fact strongly advised to retain counsel by members of their community familiar with the situation. They also continued to

make payments on a home that the bank had no intention of allowing them to keep, they did not seek alternative living arrangements or seek alternative financing to save their family home." Doc. 24, FAC, at 12:14-19.  Plaintiffs have failed to demonstrate how seeking legal representation would have avoided any damage.  Assuming Wells Fargo had not represented to the Plaintiffs that the Permanent Modification was in effect the terms of the Original Mortgage would have applied.  Plaintiffs have not spelled out how obtaining legal counsel would have helped them to avoid the foreclosure under the terms of the Original Mortgage.  Similarly, Plaintiffs have not stated what damages seeking alternate housing would have avoided.  As for making mortgage payments for the months of May, June, and July, Wells Fargo is correct in asserting that Plaintiffs were obligated to make even larger monthly payments under the Original Mortgage for those months.  Performing a preexisting duty does not constitute detrimental reliance sufficient to state a cause of action for fraud. See Conrad v. Bank of Am., 45 Cal. App. 4th 133, 158-59 (Cal. App. 3d Dist. 1996), overruled on other grounds.  The only allegation which colorably shows reliance and damage is that Plaintiffs would have sought alternative financing to avoid foreclosure. See Tyler v. Nat'l City Mortg. Co., 2012 U.S. Dist. LEXIS 9196, *6 (N.D. Cal. Jan. 26, 2012) (noting that "refrain[ing] from seeking other opportunities to refinance" may constitute detrimental reliance).  That allegation is sufficient to state a cause of action for fraud against Wells Fargo.

There are no relevant allegations regarding Freddie Mac.  Plaintiffs have not stated a cause of action against Freddie Mac.

**D. Unfair Competition Law**

"[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.  Plaintiffs accuses Wells Fargo of "(a) engaging in a pattern and practice of deception and misdirection with respect to representations about the status and completeness of the modification agreement; (b) defrauding plaintiffs respecting entering into and performing under a modification; (c) coercive and predatory practices associated with forcing the family to repeatedly provide the same information to defendant as

10

part of a sham 'vetting' process for a modification which defendant apparently had no intention of ever entering into; (d) misleading plaintiff into believing the modification had already been approved and processed when in fact it had not; (e) failing and refusing to provide accounting of the alleged indebtedness despite repeated requests therefore; and (f) wrongfully initiating foreclosure proceedings even after plaintiff had cured any alleged default with payment and tender of payment at various intervals dutin ght modification process." Doc. 24, FAC, at 10:7-19. Plaintiffs further explained that "the family is alleging that Wells Fargo essentially engaged in a sham vetting process whereby they mislead the family into believing they had qualified for a modification, and had accepted payments from the family under the modified terms, and that any default had been cured, all under the auspices of a government regulation called HAMP. *But lo, this was not the case at all.* Rather, the bank merely strung these people along in order to more effectively and efficiently foreclose on the property and receive full reimbursement for the amount of the loan under the HAMP program." Doc. 31, Plaintiffs' Opposition to Wells Fargo, at 5:19-26, emphasis in original. Wells Fargo argues the "allegations under the Second Cause of Action are necessarily grounded in alleged violations of HAMP." Doc. 33, Wells Fargo Reply, at 6:7-8. As stated above, there is no private cause of action for violations of HAMP. State law may not be used to plead around that bar. To the extent Plaintiffs argue that Wells Fargo undertook the HAMP procedure (vetting process) in bad faith, that theory of unfair competition is dismissed. Plaintiffs' other allegations are a restatement of their assertion that Wells Fargo violated the Permanent Modification. Specifically, Plaintiffs allude to the allegation that Wells Fargo fraudulently reassured them that the Permanent Modification was in effect.

Fraudulent conduct under the unfair competition law "does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (Cal. App. 4th Dist. 2008), citations omitted. Whether a business practice is fraudulent is "based on the likely effect such practice would have on a reasonable consumer." McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1471 (Cal. App. 2nd Dist. 2006). Though the cause of action is different than common law fraud, the heightened pleading standards of Fed. Rule Civ. Proc. 9 still apply.

Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of...UCL"). The practice Plaintiffs object to are the verbal confirmations that the Permanent Modification was in effect. "False and misleading representations necessarily constitute unfair business practices within the meaning of that statute." People v. Dollar Rent-A-Car Sys., 211 Cal. App. 3d 119, 129 (Cal. App. 1st Dist. 1989).

**E. Rescission and Restoration, Possession, and Quiet Title**

These causes of action are related in that they all seek to recover the Property; to some extent, they constitute remedies for the other causes of action. The court construes the rescission and restoration and possession causes of action to be a claim seeking cancellation of Freddie Mac's trustee's deed; such a cause of action can be maintained against the buyer of a foreclosed property. See Melendrez v. D & I Investment, Inc., 127 Cal. App. 4th 1238, 1247 n.14 (Cal. App. 6th Dist. 2005).

Freddie Mac argues that the unlawful detainer judgment in which possession of the property was awarded to Freddie Mac collaterally estops Plaintiffs' causes of action. Plaintiffs point out the unlawful detainer judgment states "[Plaintiffs in this case] reserve the right to pursue federal case." Doc. 35, Part 2, Ex. G, March 23, 2011 Stipulated Judgement, at 2 (49 of 49). "A stipulated judgment normally concludes or determines all matters put into issue by the pleadings, unless the parties agree to restrict its scope by expressly withdrawing an issue from that judgment." Malkoskie v. Option One Mortgage Corp., 188 Cal. App. 4th 968, 975 (Cal. App. 2d Dist. 2010), citations omitted. The FAC predates the stipulated judgment. That reservation of rights withdrew the issues of this case from the coverage of the stipulated judgment. Freddie Mac admits as much by stating, "In the event Plaintiffs acquire title at some point in the future, they may have the right to pursue the statutorily prescribed method for recovering possession at that point." Doc. 37, Freddie Mac Reply, at 6:4-6. Thus, if Plaintiffs successfully prosecute their breach of contract claim, they may be entitled to possession of the Property; the unlawful detainer judgment does not bar any of the claims in this suit.

Defendants argue that the trustee sale to Freddie Mac is irreversible. "It is the general

rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." Bank of America Nat'l Trust & Sav. & Trust Asso. v. Reidy, 15 Cal. 2d 243, 248 (Cal. 1940).  The prior Order noted that "Plaintiffs's briefing suggests that Freddie Mac is a bona fide purchaser who was not aware of Plaintiffs' alleged loan modification agreement." Doc. 23, January 7, 2011 Order, at 9:3-4.  Again, California case law suggests that sale of a foreclosed property (even if wrongful) to a bona fide purchaser defeats an attempt to reverse the sale. See Melendrez v. D & I Investment, Inc., 127 Cal. App. 4th 1238, 1258 (Cal. App. 6th Dist. 2005).  "[T]he proper standard to determine whether a buyer at a foreclosure sale is a BFP is whether the buyer (1) purchased the property for value, and (2) had no knowledge or notice of the asserted rights of another." Melendrez v. D & I Investment, Inc., 127 Cal. App. 4th 1238, 1253 (Cal. App. 6th Dist. 2005).  In the new pleading, Plaintiffs allege "Purchaser Freddie Mac was fully apprised of defendant bank's fraud and bad faith in its efforts to wrest title from the unsuspecting Singh Family.  Freddie Mac acquiesced by its inaction to this fraudulent course of conduct which included paying lip service to a Permanent Loan Modification Agreement when in fact the bank had no inclination or intention of modifying the load or helping the family to stay in its home.  Thus, because Freddie Mac had prior knowledge and gave consent to the bank's action in this regard, it cannot be deemed a bona fide third party purchaser of the property as a matter of law." Doc. 24, FAC, at 21:10-17.  At this stage, Plaintiffs have alleged Freddie Mac is not a bona fide purchaser for value.  There is the possibility that the sale of the Property can be reversed.

      Defendants argue that Plaintiffs can not recover the Property since they do not offer to repay the full amount owed to Wells Fargo under the Permanent Modification.  "Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt." Montoya v. Countrywide Bank, 2009 U.S. Dist. LEXIS 53920, *32 (N.D. Cal. June 25, 2009), citations omitted.  Plaintiffs' request to set aside the

foreclosure sale as part of the breach of contract claim is a cause of action that is implicitly integrated to the foreclosure sale, subject to the tender rule. See <u>Karlsen v. American Sav. & Loan Assn.</u>, 15 Cal. App. 3d 112, 121 (Cal. App. 2d Dist. 1971) ("Appellant's alleged cause of action for breach of an oral agreement is implicitly integrated with the voidable sale. However, absent an effective and valid tender, the sale became valid and proper. The hurdle which appellant has not been able to clear either legally or financially is that he never made a valid tender"). Plaintiffs allege they have "stood ready, willing, and able to *pay the entire indebtedness* at the agreed-upon interval set forth in the deed of trust and promissory note." Doc. 24, FAC, at 8:11-13, emphasis in original. "A tender is an offer of performance made with the intent to extinguish the obligation. A tender must be one of full performance and must be unconditional to be valid." <u>Arnolds Management Corp. v. Eischen</u>, 158 Cal. App. 3d 575, 580 (Cal. App. 2d Dist. 1984), citations omitted. Offering to make the payments specified by the Permanent Modification is insufficient. However, "tender may not be required where it would be inequitable to do so." <u>Onofrio v. Rice</u>, 55 Cal. App. 4th 413, 424 (Cal. App. 4th Dist. 1997). In this case, equity does not require tender. Plaintiffs are not seeking to reverse the entire transaction with Wells Fargo; rather, they seek to enforce the terms of the contract and continue to make monthly payments per the terms of the Permanent Modification.[2] As alleged, Plaintiffs have not defaulted on the terms of the Permanent Modification and were current on their payments. In most cases where a plaintiff seeks to reverse a foreclosure sale, the plaintiff is in default on the mortgage. See, e.g., <u>Karlsen v. American Sav. & Loan Assn.</u>, 15 Cal. App. 3d 112, 115 (Cal. App. 2d Dist. 1971). Under those circumstances, returning the property to a plaintiff leaves the plaintiff in default. Thus, the dispute between the parties is not resolved as a plaintiff who recovers the property is likely to continue missing mortgage payments; he/she is likely to lose the property at a later date in a second foreclosure proceeding. "This [tender] rule is premised upon the equitable maxim that a court of equity will not order that a useless act be

---

[2]Though the eleventh cause of action is entitled "Rescission and Restoration," the substance of the cause of action does not seek to undo the Permanent Modification. Therefore, the court does not interpret Plaintiffs' pleading to seek rescission.

14

performed." Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 579 (Cal. App. 2d Dist. 1984). Here, Plaintiffs do not appear to be in default. Restoring the Property and reinstating the Permanent Modification would not be a useless act. The tender requirement is waived.

Defendants argue Plaintiffs can not quiet title on the Property due to lack of tender. Doc. 26, Wells Fargo Brief, at 19:18-20:3. Plaintiffs make no reply to this argument. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Shimpones v. Stickney, 219 Cal. 637, 649 (Cal. 1934). "The cloud upon his title persists until the debt is paid. He is entitled to remain in possession, but cannot clear his title without satisfying his debt." Aguilar v. Bocci, 39 Cal. App. 3d 475, 477-78 (Cal. App. 1st Dist. 1974), citations omitted. As discussed, Plaintiffs have not tendered the full amount of the mortgage. Plaintiffs may seek to recover possession of the Property, but may not quiet title until the entire mortgage is paid off.

The quiet title cause of action is dismissed as to both parties. Defendants have stated a cancellation of trust deed cause of action against Wells Fargo and Freddie Mac.

## IV. Order

Defendants' motions to dismiss are GRANTED in part and DENIED in part. Plaintiffs are not granted leave to amend.

1. The breach of contract claim is DISMISSED without prejudice as to Freddie Mac. Plaintiffs have stated a claim against Wells Fargo.

2. The unfair competition law claim is DISMISSED without prejudice as to Freddie Mac. Plaintiffs have stated a claim against Wells Fargo

3. The fraud claim is DISMISSED without prejudice as to Freddie Mac. Plaintiffs have stated a claim against Wells Fargo.

4. The breach of the implied covenant of good faith and fair dealing claim is DISMISSED without prejudice as to Freddie Mac. Plaintiffs have stated a claim against Wells Fargo.

5. The equitable accounting, breach of fiduciary duty, negligence, violation of Cal. Bud. &

Prof. Code §110130 et seq., and violation of 18 U.S.C. §1961 et seq. claims are DISMISSED as to both Defendants.

     6. Plaintiffs have stated a rescission and restoration/possession claim against Wells Fargo and Freddie Mac.

     7. The quiet title claim is DISMISSED without prejudice as to both Defendants.

IT IS SO ORDERED.

Dated:   March 1, 2012

                                       CHIEF UNITED STATES DISTRICT JUDGE